**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Andrew WEST, Vertis King, and Garland Jeffers, Defendants-Appellants.**

**Nos. 79–2327, 79–2354.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1981.

Decided Jan. 29, 1982.*

As Amended Feb. 22, 1982.

Rehearings Denied March 29, 31, 1982.

Certiorari Denied June 14 and June 21, 1982.

See 102 S.Ct. 2944, 2972.

---

\* Pursuant to Circuit Rule 16, this opinion has been circulated among all judges of this Court in regular active service. No judge favored a hearing *en banc.*

Stephen C. Bower, Kentland, Ind., Michael J. Howlett, Jr., Thomas S. Moore, Chicago, Ill., for defendants-appellants.

Daniel M. Purdom, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BAKER, District Judge.**

BAUER, Circuit Judge.

Garland Jeffers, Richie Dean Jeffers, Andrew West, and Vertis King were charged with conspiring to violate the Travel Act[1] and the Controlled Substances Act[2] between May 1974 and March 1975. The six-count indictment further charged all four co-defendants with causing one Ollie Mae Vinson to travel in interstate commerce to facilitate bribery in violation of the Travel Act and charged West, King, and Richie Dean Jeffers with perjury in violation of 18 U.S.C. § 1623.

The case was tried to a jury in the United States District Court for the Northern District of Illinois, the Honorable Bernard M. Decker presiding. The evidence showed that in May 1974 Garland Jeffers was incarcerated at the Cook County Jail, Chicago, Illinois, where co-defendants West and King were employed as correctional officers. While incarcerated in the jail awaiting trial on drug trafficking charges, Jeffers, head of the very lucrative "Family" drug ring located in Gary, Indiana,[3] continued to run Family operations. Jeffers arranged for his wife, Richie Dean Jeffers,

and Ollie Mae Vinson, both Family members, to give King and West pay-offs in exchange for special privileges for Jeffers and other incarcerated Family members. The jury returned a verdict acquitting West of the perjury count and convicting all four co-defendants on all other charges.

Garland Jeffers, West, and King appeal. West and King claim that the district court erred in denying their pretrial motions for severance. Jeffers claims that the court erred in denying his motion to dismiss the indictment. Additionally, they challenge several evidentiary rulings, claiming that they were harmful error. Finally, they claim that the Government's closing argument was so prejudicial that reversal is mandated. For the reasons discussed in this opinion, we affirm.

I

Appellants raise several issues on appeal. We consider first their claim that the district court erred in denying West's and King's pretrial motion for severance and Jeffers' motion to dismiss the indictment.

A

Defendants West and King sought to be tried separately from co-defendant Jeffers. Their joint motion for severance set forth two grounds: (1) that Jeffers would offer exculpatory testimony in their behalf if they were tried separately and (2) that King and West would be prejudiced by guilt-by-association if tried with Jeffers, a convicted drug dealer.[4] An affidavit filed

---

** The Honorable Harold A. Baker, Judge of the United States District Court for the Central District of Illinois, is sitting by designation.

1. The Travel Act prohibits traveling in interstate commerce with intent to commit bribery. 18 U.S.C. § 1952.

2. Appellants were charged with violating 21 U.S.C. § 841(a)(1) of the Controlled Substances Act which makes it unlawful to distribute knowingly, or possess with intent to distribute, heroin.

3. Garland Jeffers and five others formed the "Family" in 1972 to organize and control drug traffic in Gary. It is estimated that the organi-

zation received a gross income of $5000 per day from its illegal drug sales. For a more detailed description of the Family's activities, see *United States v. Jeffers*, 532 F.2d 1101, 1104–1105 (7th Cir. 1976), *aff'd. in part and vacated in part*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168, *reh. denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 164 (1977).

4. Jeffers was convicted in 1974 of conspiring to distribute narcotics in violation of 21 U.S.C. §§ 846, 841(a)(1). That conviction was affirmed by this court in *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). In 1975, Jeffers was convicted of conducting a

with the motion set forth the substance of Jeffers' expected testimony. Without hearing any testimony, the court denied the motion.[5] West and King claim that they were denied due process and the right to a fair trial by the court's failure to sever.

Motions to sever are addressed to the sound discretion of the trial court, and we will overturn the court's ruling only upon a clear showing of abuse of discretion. *United States v. Papia*, 560 F.2d 827, 836 (7th Cir. 1977); *United States v. Echeles*, 352 F.2d 892, 896 (7th Cir. 1965). "[T]he general rule has evolved that persons jointly indicted should be tried together, particularly so when the indictment charges a conspiracy or a crime which may be proved against all the defendants by the same evidence and which results from the same or similar series of acts." *Id.* (citations omitted). Appellants bear the heavy burden of demonstrating that they were denied a fair trial by joinder. *United States v. Harris*, 542 F.2d 1283, 1312 (7th Cir. 1976), *cert. denied sub nom. Clay v. United States*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

Appellants claim that they were unduly prejudiced by being tried with a convicted drug dealer because the jury was likely to find them guilty by association. The jury actually acquitted West on one of the six counts of the indictment, rebutting any claim that the verdict against King and West was based on guilt-by-association. The fact that King and West were law enforcement officers, without more, did not entitle them to a separate trial merely because Jeffers is a known criminal. *United States v. Harris*, 542 F.2d at 1313.

Appellants' second argument is equally unavailing. Severance of a co-defendant is required only where one co-defendant's testimony would exculpate the others. *United States v. Echeles*, 352 F.2d 892, 898 (7th Cir. 1965). If the co-defendant's testimony merely contradicts part of the Government's proof, joinder does not deprive defendants of a fair trial. *United States v. Papia*, 560 F.2d 827, 837 (7th Cir. 1977); *United States v. Abraham*, 541 F.2d 1234, 1240 (7th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). The only testimony Jeffers could have provided in King's and West's behalf was that he never authorized or paid any bribes to them. And in fact, he did so testify. He could not, however, exculpate them because his testimony did not refute Jacki Boone's and Ollie Mae Vinson's testimony that they saw King and West accept bribes. The district court did not abuse its discretion in denying appellants' severance motion.

### B

Jeffers claims that the district court erred in denying his motion to dismiss the indictment because prosecution of this case placed him twice in jeopardy for the same offense. The indictment in this case charging Jeffers with conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1) was returned in the Northern District of Illinois in January 1977. Prior to that, in March 1974, Jeffers was indicted in two separate indictments returned in the Northern District of Indiana charging him with conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. § 846 and with conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848.[6] Jeffers

continuing criminal enterprise to distribute heroin and cocaine in violation of 21 U.S.C. § 848. We affirmed that conviction in *United States v. Jeffers*, 532 F.2d 1101 (7th Cir. 1976), *aff'd. in part and vacated in part*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168, *reh. denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 164 (1977).

**5.** Appellants also claim that the district court abused its discretion in refusing to hold an evidentiary hearing before ruling on West's and

King's joint motion to sever. West and King wanted to call Jeffers to the stand to make an offer of proof. They admitted, however, that the affidavit filed with the motion already set forth the substance of the offer. Tr. at 15–16. Under these circumstances, a hearing was not needed. We find that the district court did not abuse its discretion.

**6.** *See* note 4 *supra.*

claims that the Government has taken one continuing conspiracy to distribute heroin and divided it into two smaller conspiracies in violation of the fifth amendment guarantee against double jeopardy.

■ The double jeopardy clause prohibits prosecution of a single conspiracy as two separate conspiracies. *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); *United States v. Castro*, 629 F.2d 456, 461 (7th Cir. 1980). A defendant claiming that he has been subjected to double jeopardy bears the burden of establishing that both prosecutions are for the same offense. *United States v. Castro*, 629 F.2d at 461. The defendant must show that "the evidence required to support a conviction on one indictment would have been sufficient to warrant a conviction on the other" indictment. *United States v. Buonomo*, 441 F.2d 922, 925 (7th Cir.), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971) (citations omitted). In determining whether a defendant has satisfied the "same evidence test," a reviewing court must

> look to both the indictments and the evidence and consider such factors as whether the conspiracies involve the same time period, alleged co-conspirators and places, overt acts, and whether the two conspiracies depend on each other for success. Where several of these factors are present, the conclusion follows that the alleged illegal combinations are not separate and distinct offenses.

*United States v. Castro*, 629 F.2d at 461 (citations omitted).

■ Having reviewed these factors, we conclude that the conspiracy charged in the indictment giving rise to this case is not the same offense in law and in fact as was charged in the first conspiracy indictment or in the continuing criminal enterprise indictment. Although all three indictments charged Jeffers with distributing heroin, the time period, the alleged co-conspirators and places, and the overt acts are different. Moreover, it is clear that the two conspiracies did not depend on each other for success.

Both the continuing criminal enterprise and the first conspiracy were alleged to have begun about November 1971 and continued to March 1974, whereas this conspiracy was alleged to have begun in May 1974 and continued to March 1975. In fact, the second conspiracy could not have been formed until May 1974 when the first Family member was incarcerated at Cook County Jail. The ultimate objective of the first conspiracy and continuing criminal enterprise, as set forth in the indictments, was to control distribution of heroin and cocaine in Gary, Indiana, whereas the ultimate objective of this conspiracy was to influence Cook County Jail officers to provide favors, privileges, and heroin to incarcerated Family members. Although there is some overlap among the named co-conspirators in the two conspiracies, the central figures in the second conspiracy, King and West, without whom this conspiracy would have failed, were not involved in the first conspiracy at all. The overt acts and places charged in the two conspiracies are also different. The indictment in the first conspiracy charges only acts involving drug supply and distribution occurring in Gary, Indiana. This conspiracy, on the other hand, charged acts of bribery and heroin distribution in the jail, all of which occurred in Cook County, Illinois. Finally, the two conspiracies did not depend on each other for success. By the time the second conspiracy could have started, the conspiracy to distribute narcotics in Gary, Indiana was completed because the principals were in jail.

■ We are convinced that both conspiracies are in fact quite separate. In essence, Jeffers is asking us to hold that whenever a defendant is convicted of one conspiracy to distribute narcotics he can never be convicted of another conspiracy to distribute narcotics. Of course, the guarantee against double jeopardy does not insulate a criminal from punishment for subsequent offenses merely because he chooses to continue committing the same type of crime. The district court did not err in denying Jeffers' motion to dismiss the indictment.

## II

■ Appellants claim that several of the district court's evidentiary rulings deprived them of a fair trial. It is well established that the district court has broad discretion to assess the relevancy of proffered evidence. We will reverse a district court ruling on the admissibility of evidence only upon a clear showing that the court abused its wide discretion. *United States v. Lampson*, 627 F.2d 62, 66 (7th Cir. 1980); *United States v. Micklus*, 581 F.2d 612, 617 (7th Cir. 1978); *United States v. Bolin*, 514 F.2d 554, 558–59 (7th Cir. 1975).

### A

West claims that the district court committed reversible error when it refused to permit Dr. Miller, a psychiatrist who had examined West, to testify concerning West's limited intelligence. The evidence presented during the Government's case-in-chief showed that Jeffers had arranged for other Family members to give West a car. Dr. Miller would have testified that it is unlikely that West realized when he accepted the car that it was a bribe or that he would be expected to provide some benefit to Jeffers in return. West claims that Dr. Miller's testimony was evidence of a relevant character trait offered to rebut the Government's proof that West harbored specific intent to accept a bribe when he accepted the car.

■ Rule 404(a)(1), Fed.R.Evid., provides that a defendant may introduce evidence of a relevant character trait to show that he acted in conformity with that trait. Failure to permit a defendant charged with a specific intent crime to introduce evidence of a character trait that makes it unlikely that he harbored the requisite criminal intent is reversible error. *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir. 1977).

■ Neither Rule 404(a)(1) nor any of the cases interpreting the rule defines "character trait". No case that we have discovered, however, has ever included intelligence within the purview of the rule. "Character trait" refers to elements of one's disposition, "such as honesty, temperance, or peacefulness." McCormick on Evidence § 195. We do not believe that intelligence is a character trait within the meaning of the rule. Therefore, *United States v. Staggs* is not controlling. Rather, our review of the district court's admissibility ruling is limited to determining whether the court abused its wide discretion concerning admissibility of expert testimony. *United States v. Watson*, 587 F.2d 365, 369 (7th Cir. 1978), *cert. denied sub nom. Davis v. United States*, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979).

■ Expert testimony is admissible only when the specialized knowledge of an expert will assist the trier of fact in understanding the evidence or in determining a fact in issue. Fed.R.Evid. 702. "The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court about affairs not within the full understanding of the average man." *United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980) (citations omitted). Dr. Miller was to testify, in essence, that West was of below average intelligence and thus less likely than a person of average intelligence to realize that an automobile given to him by a prisoner at the jail was a bribe. West testified on his own behalf, and as defense counsel acknowledged during oral argument, West's limited intelligence was clearly revealed to the jury during that testimony. We hold that the district court did not abuse its discretion in refusing to admit Dr. Miller's testimony because the jury was able to determine whether West realized that he was accepting a bribe without the assistance of expert testimony. *See United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980).

### B

■ Our review of appellants' next claim of error is also governed by rule 702, Fed.R.Evid. King claims that the district court erred in refusing to permit Richard English, Warden of Cook County Jail, to testify as an expert witness concerning life and conditions in the jail. The court per-

mitted English to testify, but sustained the Government's objections to questions that required English to speculate about what might have occurred in the jail. For example, the court sustained objections to questions asking English (1) how likely it was that an inmate could have sex with his wife in the jail or take drugs without other inmates knowing about it or (2) how likely it was that a guard would come to the jail on his day off and be permitted to visit an inmate on the tier.

These questions were not addressed to any specialized knowledge that English might have as warden of the jail. Rather, these questions were designed to elicit purely speculative responses that any witness could provide. Thus, rule 702 does not apply. The district court did not abuse its wide discretion in excluding speculative testimony. *United States v. Fox*, 437 F.2d 733, 735–36 (7th Cir. 1971).

### C

Appellants claim that the district court deprived them of their sixth amendment right to confront the witnesses against them by preventing them from cross-examining Charles Dunigan and Roger Aiken concerning bias and motive to fabricate. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *United States v. Hansen*, 583 F.2d 325, 332 (7th Cir.), *cert. denied*, 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978).

■ Appellants sought to question Dunigan to demonstrate that he had a motive to fabricate his grand jury testimony implicating appellants because he was the subject of a departmental investigation of illegal drug distribution in the jail. Appellants claim that testimony establishing that Dunigan knew that he was under investigation bore directly on his credibility by demonstrating a motive to shift blame to King and West.

In *United States v. DeLeon*, 498 F.2d 1327 (7th Cir. 1974), we held that a witness may be examined about bad acts for which he has not been convicted only if the examiner demonstrates (1) the bad act, (2) the government's knowledge of the act, (3) the lack of any prosecution, and (4) the existence of promises not to prosecute. *Id.* at 1333. In this case, the Government informed the trial court that the departmental investigation had been completed and no charges were pending. Defendants, however, were unable to show that the Government had promised Dunigan immunity from prosecution in exchange for testifying against defendants. Defendants were not even prepared to show that any prosecuting authority had participated in the investigation. *See United States v. Price*, 617 F.2d 455, 458–59 (7th Cir. 1979). All defendants were prepared to show was that Dunigan had been investigated and thus might have some subjective fear of prosecution. "[I]f a witness' general fear that he might be caught and prosecuted were sufficient to show bias, then the rule that past criminal conduct not resulting in conviction is inadmissible would never apply to government witnesses." *United States v. DeLeon*, 498 F.2d at 1332–33. Defendants failed to demonstrate in this court that they had lain a proper foundation in the district court to show that the prior bad act evidence they sought to introduce satisfied the admissibility criteria set forth in *United States v. DeLeon*.

Similarly, appellants have failed to demonstrate that the district court erred in limiting their cross-examination of Roger Aiken. Aiken launched into an unsolicited tirade during defense cross-examination. He attempted to leave the witness stand while blurting out that the "whole damn trial is a mockery." Tr. at 760. He also asserted that he was reluctant to accuse King and West of any wrongdoing and wished to be sent "down the creek" with them. *Id.* at 761. Upon defense counsel's motion, the trial court ordered the outburst stricken from the record and admonished the jury to ignore Aiken's comments. Defense counsel now claim on appeal that the court erred in refusing to permit them to question Aiken about the tirade to establish whether some interest or bias affecting his credibility sparked the outburst.

We agree with the trial court that any bias reflected in Aiken's outburst was against the Government, not appellants. In essence, Aiken informed the jury that he believed the Government was trying to railroad the defendants and that he believed that the defendants were as innocent of any wrongdoing as he was. These remarks indicate, if anything, that Aiken was biased against the Government and, perhaps, that he had a motive to fabricate to assist appellants. Moreover, Aiken's outburst was stricken from the record at defense counsel's request, and, thus, any cross-examination about the outburst would have been beyond the scope of direct examination. We find that the district court did not abuse its wide discretion to control the scope of cross-examination by precluding defense counsel to question Aiken about the motivation underlying his remarks.[7]

### D

Finally, King claims that the trial court abused its discretion when it refused to admit into evidence a manilla envelope containing King's financial records. The Government objected to admission on relevance grounds, whereupon the trial court asked defense counsel what the exhibit was being offered to prove. Counsel stated that the exhibit included all of the financial records that King presented to the grand jury and that it was relevant to prove that King had been forthright with the grand jury. During oral argument before this court, defense counsel stated that the exhibit was relevant to show that King had used his own funds to purchase a Cadillac that Government witnesses testified was given to King by Jeffers as a bribe. Defense counsel failed to make an offer of proof to that extent in the trial court and did not attempt to introduce any of the alleged relevant documents individually.

Defendant has failed to show that it made even the most rudimentary offer of proof to the district court concerning the exhibit's relevance. Instead, defense counsel offered to let the Government remove any documents from the exhibit that it wished to have excluded as irrelevant. It is beyond question that the duty to demonstrate relevance rests with the proponent of a piece of evidence; he may not shift this duty by magnanimously offering to permit opposing counsel to remove the irrelevant. In the absence of any showing of relevance in the district court, or, for that matter, in this court, the district court did not abuse its discretion by excluding this exhibit. Fed.R.Evid. 402.

### III

Appellants' claim that the district court erroneously admitted evidence that deprived them of a fair trial. After reviewing the record we find that the court erred in admitting the testimony of Julian McCain and Cobie Howard, but that the error was harmless. We find that the other evidence challenged by appellants was properly admitted.

### A

King claims that the trial court committed reversible error by permitting the Government to introduce statements made by alleged co-conspirators without satisfying the admissibility requirements set forth in *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), and rule 801(d)(2)(E), Fed.R. Evid. In *Santiago* we held that statements of alleged co-conspirators may be admitted as admissions of a defendant only if the Government establishes by a preponderance of independent, nonhearsay evidence that

**7.** Defendants also claim that the trial court's harsh treatment of Aiken prejudiced them. Of course, the transcript only reflects what was said, not the tone or volume. Nevertheless, judging from the transcript in this case, we can only commend the trial court on how effectively it managed to quell Aiken's outburst and remove the jury from the courtroom. The court asked the witness to be quiet three times and requested the jury to leave the courtroom twice before the court made the remark about which defendants complain. The court told the witness, "I will take care of you later." Tr. at 761. Given the circumstances, this remark is hardly inappropriate or prejudicial. The other remarks about which defendants complain occurred outside the jury's presence and thus could not have prejudiced defendants.

the defendant and declarant were co-conspirators. 582 F.2d at 1135. King challenges the admissibility of Nathan McKinney's out-of-court declaration introduced through the testimony of Julian McCain and Richie Dean Jeffers' out-of-court declaration introduced through the testimony of Ollie Mae Vinson.

 First, we find that the Government's proof established by a preponderance of the evidence that King participated in the charged conspiracy. Ollie Mae Vinson[8] testified that she gave heroin to King to give to Family member inmates. She further testified that she paid money to King on more than one occasion and also saw Richie Dean Jeffers pay King, including one lump sum payment of $1000. Jacki Boone testified that she also observed King receive a cash payment from Mrs. Jeffers. Roger Aiken, a former Cook County Jail officer, testified that he observed Jeffers in the receiving room frequently with King in violation of jail regulations prohibiting inmates in the receiving room. King would arrange for Jeffers to come to the receiving room daily to use the telephone. Homer McKinley, an automobile dealer, testified that King was accompanied by Mrs. Jeffers, as was West, when King came into McKinley's dealership to purchase a Cadillac. This independent, nonhearsay evidence linked King with the alleged co-conspirators and proved by a preponderance of the evidence that the charged conspiracy existed and that King was a co-conspirator.

Alternatively, King argues that even if the *Santiago* admissibility requirements were satisfied, the requirements of rule 801(d)(2)(E) were not because the Government failed to prove either that the statements were made by a co-conspirator or that the statements were made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E).

Julian McCain, a Family member who was incarcerated at the Cook County Jail during the time period averred in the indictment, testified that Nathan McKinney, a Family associate incarcerated at the jail, told him that King was "all right" and would arrange for McCain to be tiered with other Family members. King objected to this testimony on the ground that it was not established that McKinney was a co-conspirator.

 Once a conspiracy is established only slight evidence is needed to link a particular participant to the conspiracy. *United States v. Dalzotto*, 603 F.2d 642, 645 (7th Cir.), *cert. denied sub nom. Young v. United States*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979); *United States v. Braasch*, 505 F.2d 139, 148 (7th Cir. 1974), *cert. denied sub nom. Barry v. United States*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). The only evidence linking McKinney to the conspiracy was McCain's testimony that McKinney was a Family associate. This link with the co-conspirators is insufficient to satisfy even the slight evidence rule. Mere association with co-conspirators is insufficient to show that the declarant was a participant in the conspiracy. *United States v. Dalzotto*, 603 F.2d at 645; *United States v. Quintana*, 508 F.2d 867, 880 (7th Cir. 1975). Because the Government failed to meet its burden to demonstrate that McKinney, the out-of-court declarant, was a co-conspirator, McCain's testimony was inadmissible hearsay. Rule 801(d)(2)(E), Fed.R.Evid.

 Although the district court erred in admitting this evidence, we find that the

---

8. King also claims, alternatively, that Vinson's testimony should have been excluded because it lacked reliability and had no probative value. During trial Vinson mistakenly identified co-defendant West as King. Her entire testimony, however, reveals that she indeed did meet both West and King on different occasions and was present when each accepted bribes. She testified that she met them both sometime in May 1974. She explained at trial that "it has been so long it is really hard for me to determine which one is King and which one is West over this period of time." Tr. at 267. It is clear that Vinson met both officers, but over time simply forgot which one was named King and which was named West. This lapse of memory did not render her testimony inadmissible; rather it raised a credibility question properly left to the jury. *See* rules 401, 402, Fed.R.Evid.

error was harmless. Fed.R.Crim.Pro. 52. There was ample evidence before the jury linking King to the conspiracy and showing that he accepted cash payments from the co-conspirators and participated in the distribution of drugs. In light of this evidence of more culpable participation in the conspiracy, admission of McKinney's hearsay statement that King was an "all right guy" and that he could arrange for McCain to be tiered with fellow Family members was harmless error.

King also claims that the court erred in permitting Ollie Mae Vinson to testify concerning a statement made by Richie Dean Jeffers. King acknowledges that Mrs. Jeffers was a co-conspirator, but argues that the statement was inadmissible hearsay because it was not uttered in furtherance of the conspiracy. King, however, failed to object to this testimony at trial. Consequently, our review is limited to determining whether admitting Vinson's testimony constituted plain error. Fed.R.Crim.Pro. 52(b).

■ Vinson testified that Mrs. Jeffers told her that King and West were friendly with Garland Jeffers and were granting him special favors. In light of all the evidence linking King to the conspiracy and demonstrating that he granted Jeffers special favors, Mrs. Jeffers' out-of-court declaration was merely cumulative. Moreover, it was clearly admissible against Mrs. Jeffers as an admission of a party. Fed.R.Evid. 801(d)(2)(A). In the absence of any objection by King or a request for a limiting instruction, we do not find that the court's failure to exclude this testimony was plain error.

**B**

Jeffers claims that the district court erred in permitting Cobie Howard to testify concerning Ollie Mae Vinson's out-of-court declaration. The court admitted the evidence, over defense objection, pursuant to rule 801(d)(1)(B), Fed.R.Evid. Jeffers claims that the Government failed to satisfy all four admissibility requirements set forth in rule 801(d)(1)(B).

Ollie Mae Vinson, an unindicted co-conspirator, was a key Government witness. During cross-examination, Jeffers impeached Vinson with prior inconsistent statements, implying that her trial testimony was recently fabricated. The Government called Cobie Howard, an Indiana law enforcement officer, during rebuttal to rehabilitate Vinson. Over defense objection, the trial court permitted Howard to recount a prior consistent police statement Vinson gave in 1975.

Rule 801(d)(1)(B), Fed.R.Evid., provides that prior consistent statements of a witness are not hearsay and thus are admissible if offered to rebut a charge of recent fabrication. The rule sets forth four requirements of admissibility: (1) the out-of-court declarant must testify at trial; (2) the declarant must be subject to cross-examination concerning the out-of-court declaration; (3) the out-of-court declaration must be consistent with the declarant's trial testimony; and (4) the evidence must be offered to rebut a charge of recent fabrication. *See United States v. Guevara*, 598 F.2d 1094, 1100 (7th Cir. 1979).

Jeffers' claim presents a question of first impression in this circuit. In all the cases in which we have reviewed the admissibility of an out-of-court declaration admitted pursuant to rule 801(d)(1)(B), the out-of-court declarant was testifying and subject to cross-examination when the declaration was introduced. We have indicated quite clearly in those prior cases, however, that one of the four requirements of admissibility, as set forth in the rule, is that the declarant be testifying and subject to cross-examination concerning the declaration. *United States v. Guevara*, 598 F.2d at 1100 (1979). *See also United States v. Fearns*, 501 F.2d 486, 489 (7th Cir. 1974) ("Receipt of the statement in evidence would have been attended by the right to cross-examine about it.").

■ The Government cites cases from several other circuits in which the courts of appeals have held that 801(d)(1)(B) rebuttal statements may be admitted through the testimony of a third

party rather than through the impeached declarant. *See, e.g., United States v. Provenzano*, 620 F.2d 985, 1000–1002 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Dominguez*, 604 F.2d 304, 311 (4th Cir. 1979), *cert. denied sub nom. Sarmiento v. United States*, 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 644 (1980); *United States v. Allen*, 579 F.2d 531, 532 (9th Cir. 1978), *cert. denied sub nom. Mitchell v. United States*, 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978); *United States v. Lanier*, 578 F.2d 1246, 1255–1256 (8th Cir.), *cert. denied*, 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978); *United States v. Zuniga-Lara*, 570 F.2d 1286, 1287 (5th Cir.), *cert. denied*, 436 U.S. 961, 98 S.Ct. 3080, 57 L.Ed.2d 1128 (1978); *United States v. McGrath*, 558 F.2d 1102, 1107 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). These courts held that 801(d)(1)(B)'s third admissibility requirement was satisfied if the declarant had testified and been subject to cross-examination sometime during trial. Rule 801(d)(1)(B), however, requires not only that the declarant have been generally subject to cross-examination; he must also be subject to cross-examination concerning the out-of-court declaration. We hold that the district court erred in permitting Howard to testify concerning Vinson's out-of-court statement. If the Government wished to rebut defendant's charge of recent fabrication, the proper way to do so was to elicit Vinson's rehabilitating statement during redirect examination or to recall Vinson to testify during rebuttal.

Nevertheless, we conclude that the admission of Howard's rebuttal testimony, although error, was harmless. Fed.R.Crim. Pro. 52. Vinson testified during direct examination that she and Richie Dean Jeffers delivered $1000 to King. During cross-examination, defendants asked Vinson whether she recalled making a prior statement in

which she said they gave King $2000. She said that she remembered saying King received $1000, but indicated that it is possible that she might have said $2000. Defendants called Lee Fabrizzio, an FBI agent, to complete impeachment of Vinson. Fabrizzio testified that his report noted that Vinson told him she paid King one or two thousand dollars. In rebuttal, Howard testified that Vinson told him she and Richie Dean Jeffers paid King $1000.

 While it is true that defendants were never afforded an opportunity to cross-examine Vinson about her statement to Howard, they did have ample opportunity to demonstrate during cross-examination that she could not remember what she had told others regarding the amount paid to King. We find that Jeffers was not harmed by the introduction of this evidence.[9]

### C

King complains that the district court erred in permitting Jacki Boone to testify that King obtained heroin for her and Richie Dean Jeffers. King claims that this testimony was inadmissible evidence of other crimes.

Boone testified that she visited Cook County Jail with co-defendant Richie Dean Jeffers. During the visit, defendant West arranged for Jeffers to meet with her husband alone in the jail. After leaving the jail, Jeffers and Boone went to the Jury Box Restaurant where King joined them. Jeffers gave King some money to secure heroin for herself and Boone. The three left the restaurant together in King's car. They drove to a house which King entered, returning with a package of heroin. The women snorted the heroin in King's car.

 Evidence of crimes other than that with which a defendant is charged is admissible only to prove motive, opportuni-

---

9. We need not reach Jeffers' claim that admission of Vinson's out-of-court declaration through Howard's hearsay testimony violated the confrontation clause because we find that, if it was constitutional error, it was harmless

beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for the reasons discussed in the text accompanying this note.

ty, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b); *United States v. Dolliole*, 597 F.2d 102 (7th Cir.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979); *United States v. Ostrowsky*, 501 F.2d 318 (7th Cir. 1974). The evidence about which King complains, however, is not evidence of other crimes. King was charged with conspiracy to receive bribes and with conspiracy to possess or distribute illegal narcotics. Boone's testimony was relevant to prove elements of both charged crimes. The evidence was proof of overt acts in furtherance of the charged conspiracy which the district court properly admitted. *United States v. Harris*, 542 F.2d 1283, 1300 (7th Cir. 1976), *cert. denied sub nom. Clay v. United States*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

### IV

Jeffers claims that he was denied due process because the Government made knowing use of perjured testimony in its case against him. Ollie Mae Vinson and Julian McCain testified that Vinson visited Family members in Cook County Jail during May 1974. Jeffers claims that this testimony was perjured because the jail records, which the Government introduced, indicate that the named Family members were not incarcerated in the jail during May.

 As a general proposition, Jeffers is correct in arguing that Government failure to correct known perjured testimony violates due process. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Even if one assumes—which we do not—that Vinson's and McCain's testimony was perjured, the Government did present evidence correcting Vinson's and McCain's testimony. The Government introduced exhibits showing that Vinson could not have visited Family members at the jail in May because they were not then incarcerated at the jail. The Government did not make use of known perjured testimony in this case.

### V

Finally, appellants complain that the Government's closing argument was so peppered with prejudicial and improper remarks that reversal is mandated. Appellants, however, failed to object to any of these remarks during trial, nor did they request any curative instructions. In the absence of any objection, our review of the closing argument is limited to determining whether the prosecutor's remarks were so prejudicial as to amount to plain error. Fed.R.Crim.Pro. 52; *United States v. Spain*, 536 F.2d 170, 174 (7th Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976); *United States v. Grooms*, 454 F.2d 1308, 1312 (7th Cir.), *cert. denied*, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972).

 A United States Attorney "may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Of course, one of the "hard blows" that an attorney, including a Government attorney, may strike is comment upon his opponent's arguments. *United States v. Isaacs*, 493 F.2d 1124, 1165 (7th Cir.), *cert. denied sub nom. Kerner v. United States*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, *reh. denied*, 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d 1178 (1974). It is beyond question that invited response is a proper subject of closing argument. *Id.* at 1165. *See also United States v. Falk*, 605 F.2d 1005, 1013 (7th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980).

Appellants cite to numerous specific comments during the Government's argument as improper. We have reviewed the trial transcript, including the witness testimony and all the attorneys' arguments, and are convinced that all of the remarks in the prosecutor's closing argument that appellants cite as improper fall safely within the invited response doctrine. We will discuss only a few characteristic examples to show the invited nature of the Government's remarks.

■ Appellants complain that the Government placed the weight and prestige of the United States Attorney's Office behind its case when counsel for the Government remarked:

I will stand up for everyone in the government, that's who I represent. And I will tell you right now, if you have any doubts about the propriety of what the government did in this case save us all a lot of time, let us all go home, let all of these [defendants] go home. Go back in the jury room, elect yourself a foreperson, find all four of them not guilty. Don't bat an eyelash. Because we don't need this case. The government doesn't need cases.

Tr. at 1769–1770. This remark was in direct response to defense counsels' comments in closing that the Government intimidated its witnesses, cajoled them into testifying favorably for the Government, and, in fact, "purchased" their testimony. Defense counsel went even further, remarking concerning one witness, "She didn't remember this incident until ... she talked to an Assistant United States Attorney, and then her memory was jogged about this." *Id.* at 1749. Defense counsel, not the Government, first put the integrity of the United States Attorney's Office in issue. The Government's response was invited and within the bounds of proper argument. *See United States v. Isaacs,* 493 F.2d at 1165.

■ Similarly, the Government's remark, "I believe Mr. Gant said something like, 'A conspiracy between the prosecution and its witnesses,'" tr. at 1769, was invited response. Defense counsel Gant stated during opening argument that "you will see a conspiracy but the conspiracy, I suggest to you most respectfully, will be the conspiracy that has developed between the prosecution's witnesses." *Id.* at 100. During closing argument, another defense attorney referred to a conspiracy between the government's witnesses. Government counsel was only responding to these references.

Appellants are correct in pointing out that defense counsel referred to a conspiracy among the prosecution's witnesses whereas the Government disclaimed the existence of a conspiracy between it and its witnesses. This, however, is a distinction without a difference. The Government attorney carefully noted that he believed defense counsel "said something like" that there was a conspiracy between the prosecution and its witnesses. No daily transcripts of the proceedings were available during trial, so government counsel was forced to rely on his recollection and notes concerning defense counsels' arguments. As the Supreme Court noted in *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974), inaccuracies are likely to occur during improvised oral arguments. Under these circumstances, we find that the Government's inaccuracy was inadvertent and insignificant.

■ Appellants also complain that the Government referred to its unwillingness to enter into plea negotiations with Garland Jeffers in violation of rule 11(e), Fed.R. Crim.Pro. Defense counsel invited this reference when it implied in closing that the Government would have willingly made a deal with Jeffers. To underscore the Government's willingness to negotiate with Jeffers, defense counsel stated, "The government, I suggest to you, and I don't mean to be facetious, has been handing out deals like Monty Hall." Tr. at 1763. In response, the Government stated:

And I guess I'm supposed to be Monty—this guy on Make a Deal, I can't remember the name, Monty somebody— I'm making a deal.

I will tell you right out, flat out, the government wouldn't have made a deal with Garland Jeffers if we had to close down the U.S. Attorney's Office and all of us go out and pick potatoes. That's ridiculous, a deal for Garland Jeffers to come in and testify, absolutely ridiculous.

*Id.* at 1779–80. Defendants are estopped from complaining merely because the Government responded to their baited argument.

■ During the above-quoted portion of the Government's argument, Garland Jef-

**690**

fers interrupted the prosecutor and stated in the presence of the jury that the Government had in fact offered him a plea bargain. Outside the presence of the jury, the Government acknowledged that it had suggested to Jeffers that he plead guilty, but that there were no negotiations concerning whether he would testify for the Government. The court later instructed the jury to disregard any reference by anyone to plea negotiations. Appellants King and West claim that this curative instruction was insufficient to diminish the prejudicial effect of Jeffers' comments, which they believe the Government precipitated. They claim that the court's failure to inform the jury of all the details concerning the plea negotiations between Jeffers and the Government was reversible error.

The trial court is in the best position to evaluate the prejudicial effect of a co-defendant's outburst on the jury and decide what, if any, curative instruction is necessary. *United States v. Fleming*, 504 F.2d 1045, 1050 (7th Cir. 1974). In this case, a curative instruction was given. Moreover, we fail to see how Jeffers' remark concerning whether he and the Government had entered into any plea negotiations could have prejudiced King and West. His outburst made no reference to his co-defendants and in no way implied that he or they had engaged in any wrongdoing. Under all the circumstances of this case, we think the trial court's instruction cured any prejudice to King and West resulting from Jeffers' comments. *See United States v. Dellinger*, 472 F.2d 340, 385–86 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). *See also United States v. Aviles*, 274 F.2d 179, 193 (2d Cir.), *cert. denied sub nom. Evola v. United States*, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960).

## VI

For the reasons discussed in this opinion, the judgment of the district court is

AFFIRMED.