**UNITED STATES of America, Appellee,**

v.

**John SUMNICHT, Defendant-Appellant.**

**No. 1075, Docket 87–1009.**

United States Court of Appeals, Second Circuit.

Argued April 29, 1987.

Decided June 29, 1987.

er's First Amendment rights, and further legitimate governmental objectives in a rational

Mark C. Hansen, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, on the brief), for appellee.

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for defendant-appellant.

Before FEINBERG, Chief Judge, KEARSE and WINTER, Circuit Judges.

manner." *Lucas v. Scully*, 509 N.Y.S.2d 640, 641 (N.Y.App.Div.1986).

KEARSE, Circuit Judge:

Defendant John Sumnicht appeals from a judgment of the United States District Court for the Southern District of New York, entered after a jury trial before Thomas P. Griesa, *Judge*, convicting him of one count of mail fraud, in violation of 18 U.S.C. § 1341 (1982), and 13 counts of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314 (1982). Sumnicht was sentenced to concurrent prison terms of one year and five months on the mail fraud count and on one of the transportation counts; on the 12 remaining counts, the court suspended the imposition of sentence and imposed concurrent two-year terms of probation. On appeal, Sumnicht challenges only his conviction of mail fraud, contending that the evidence of mailing was insufficient to support his conviction on that count. Although the question is a close one, we conclude that the evidence of mailing was sufficient, and we affirm the judgment.

## BACKGROUND

The mail fraud count charged that Sumnicht had caused fraudulent claims to be mailed to the Merrill Lynch brokerage firm seeking payment of interest on government securities of which Merrill Lynch was the registered owner. The pertinent evidence may be summarized briefly as follows.

Merrill Lynch was the registered owner of Ginnie Mae securities; after it had sold such securities, Merrill Lynch would continue to receive the interest payments until the new owners registered their ownership. As Ginnie Maes were actively traded, Merrill Lynch often did not know precisely who owned the Ginnie Maes that it had sold but that were still registered to it. Merrill Lynch would pay the interest it received on the sold securities to the new owners on request when they submitted claim forms that included certain information, including the due date, the interest rate, and the certificate number. Though much of the required information was publicly available, the name in which a Ginnie Mae was registered and its certificate number were not public information.

Sumnicht was the founder and owner of a company called Transplants For Life ("TFL") in Madison, Wisconsin. In September 1983, Merrill Lynch received 13 claim forms from TFL seeking interest on Ginnie Maes. The forms contained all of the required information, including the certificate numbers, and Merrill Lynch accordingly sent TFL checks totaling $332,399.66. TFL did not own the Ginnie Maes and had no right to the interest payments.

The evidence that the TFL claim forms had been mailed was circumstantial rather than direct. There was no testimony from Merrill Lynch that these claim forms had arrived in the mail; the company would have accepted such claims whether received in the mail or by messenger; it was not Merrill Lynch's practice to keep a record as to how a claim was received or to stamp the form in such a way as to indicate the manner of its delivery. The circumstantial evidence of mailing came from the testimony of two Merrill Lynch employees: the supervisor of the "principal and interest" department, which processed such claims, and the clerk who had received and processed the TFL claims. The latter testified that Merrill Lynch ordinarily received claim forms through the mail. The supervisor, who had worked at Merrill Lynch for 25 years, testified that claim forms from out-of-town companies were normally received by mail. He was not aware of any occasion on which a claim submitted by an out-of-town company had arrived at Merrill Lynch other than through the mail.

## DISCUSSION

On appeal, Sumnicht emphasizes that the Ginnie Mae certificate numbers were not readily or publicly available and that there was no evidence as to how TFL had obtained that information; thus, as acknowledged by the government, there was a strong possibility that that information had come from inside Merrill Lynch itself. If a Merrill Lynch employee was a participant in the fraudulent scheme, it would have been as easy for the claims to be hand-delivered as for them to be mailed. Hence, Sumnicht argues that the government's

proof was insufficient to prove beyond a reasonable doubt that the claim forms were mailed to Merrill Lynch. We disagree.

In considering a claim that the evidence was insufficient to support a conviction, the appellate court is required to view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must credit every inference that could have been drawn in the government's favor, *United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt. *United States v. Taylor,* 464 F.2d 240, 244–45 (2d Cir.1972). These principles apply whether the evidence being reviewed is direct or circumstantial. *See Glasser v. United States,* 315 U.S. at 80, 62 S.Ct. at 469.

The evidence here was ample to permit the jury to conclude beyond a reasonable doubt that Merrill Lynch had rarely, if ever, received a claim form from an out-of-town company other than through the mail. Further, the jury could have inferred from this fact that, although it might have been convenient for an accomplice within Merrill Lynch to hand-deliver the claims, such an accomplice would not wish to deliver them in a manner that would invite special attention to them, thereby imperiling the success of the scheme. Nor would such an accomplice wish to take the risk of calling attention to his own connection with these claims. Thus, viewed in the light most favorable to the government, the evidence was sufficient to permit the jury to infer beyond a reasonable doubt that an accomplice within Merrill Lynch would have taken pains to see that the fraudulent TFL claims arrived in the same manner as virtually all other claims from out-of-town companies, *i.e.,* by mail.

United States v. Srulowitz, 785 F.2d 382, 387 (2d Cir.1986), relied on by Sumnicht, is distinguishable. In *Srulowitz* we ruled that the government's proof of mailing of a particular letter was insufficient; but there the government produced no evidence of the customary transmittal practices or experiences of either the author of the letter or its addressee, and the letter had been found only in the files of the author's attorney. There was no evidence that it had ever been delivered to the addressee, much less delivered through the mail.

In the present case, in contrast, the claim forms were received by the addressee and the evidence was compelling that it would have been unusual for such forms to arrive other than by mail. In all the circumstances, we cannot conclude that the evidence was insufficient to support the jury's finding that the TFL claim forms had been sent to Merrill Lynch by mail.

## CONCLUSION

The judgment of conviction is affirmed.