UNITED STATES of America,
Plaintiff–Appellee,

v.

La Dena DUNNING,
Defendant–Appellant.

No. 90–6139.

United States Court of Appeals,
Tenth Circuit.

April 8, 1991.

Robert G. McCampbell, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., and Timothy W. Ogilvie, Asst. U.S. Atty., on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Duke Holden, Oklahoma City, Okl., for defendant-appellant.

Before LOGAN, SEYMOUR, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a multi-count indictment LaDena Dunning was charged in three counts as follows: In Count 1 Dunning was charged with conspiring with her mother, Marilyn Kelley, and others to commit bank fraud and mail fraud in violation of 18 U.S.C. § 371; in Count 11 Dunning was charged with mail fraud in violation of 18 U.S.C. § 1341 and 2; and in Count 12 Dunning was charged with witness intimidation in violation of 18 U.S.C. § 1512(b)(3). Dunning was tried jointly with her mother, Marilyn Kelley. A jury convicted Dunning on all three counts and, pursuant to the Sentencing Guidelines, she was sentenced to imprisonment for forty-six months on each of the three counts, said sentences to be served concurrently. Dunning now appeals her several convictions and sentences.[1]

At trial, Dunning did not testify nor were any witnesses called in her behalf. This is mentioned merely to show that all evidence adduced at trial was presented by the government. It was the government's theory of the case that Kelley and Dunning organized a business entity known as Shannon Financial in which they were both corporate officers, and that through the use of this company they conspired to commit bank fraud and mail fraud by obtaining loans from various banks and from I.T.T. Financial Corporation by means of false pretenses.

As indicated, Count 11 charged Dunning with mail fraud in violation of 18 U.S.C. § 1341. Specifically, Dunning was charged with obtaining a loan from I.T.T. in the amount of $40,140 through fraudulent representations and that for the purpose of executing her scheme to defraud, she caused to be placed in the United States mail a written notation of loan approval which was delivered by the United States Postal Service from I.T.T.'s parent office in Englewood, Colorado to I.T.T.'s local office in Oklahoma City, Oklahoma. On appeal, Dunning contends that her conviction on Count 11 can not be sustained because there was insufficient proof that the loan application approval in question was actually placed in the mail and for the additional reason that the loan application approval was not necessary to obtain the loan.

■ Steve Brown, vice president of operations for I.T.T. in the Englewood, Colorado office, testified that loan applications received from the local Oklahoma City, Oklahoma office were, when approved, invariably sent by mail back to the Oklahoma City office. On cross-examination, Brown conceded that several business documents were faxed or sent by Federal Express or other courier, but he still insisted, on redirect examination, that loan application approvals were returned to the local Oklahoma City office by mail. Proof of mailing by showing an established business practice to use the mails is sufficient circumstantial evidence to require submission of the mailing issue to a jury. *United States v. Sumnicht*, 823 F.2d 13, 15 (2d Cir.1987); *United States v. Brickley*, 426 F.2d 680, 684 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); *United States v. Doran*, 299 F.2d 511, 514 (7th Cir.), *cert. denied*, 370 U.S. 925, 82 S.Ct. 1563, 8 L.Ed.2d 504 (1962).

■ Counsel also argues that any use of the mails must be in furtherance of the scheme to defraud in order to come within the mail fraud statute and suggests that Dunning obtained the loan in question before the loan application was approved by I.T.T. in Englewood, Colorado and before it was mailed back to the local I.T.T. office in Oklahoma City, Oklahoma. However, in a mail fraud case it is not necessary that the mailing predate the defendant's receipt of the loan proceeds. *United States v. Sampson*, 371 U.S. 75, 80–81, 83 S.Ct. 173, 175–

---

**1.** Marilyn Kelley was convicted on ten counts and by separate appeal sought reversal of her convictions and sentences. Except for the district court's restitution order, Kelley's convictions and sentences have now been affirmed contemporaneously with the filing of the present opinion. *See United States v. Kelley*, 929 F.2d 589 (10th Cir.1991).

76, 9 L.Ed.2d 136 (1962); *United States v. Bottom*, 638 F.2d 781, 785 (5th Cir.1981); *Sparrow v. United States*, 402 F.2d 826, 829 (10th Cir.1968). Further, mailings which facilitate concealment of a fraudulent scheme meet the "furtherance" requirement. *United States v. Walker*, 915 F.2d 1463, 1466 (10th Cir.1990) and *United States v. Rauhoff*, 525 F.2d 1170, 1176 (7th Cir.1975). In the instant case there was testimony that if the approved loan application was not in the file at the local Oklahoma City office, there would be an internal investigation of the matter.

In sum, we believe the evidence concerning the use of the mail and whether the use was in furtherance of the false scheme was such as to require submission of those issues to the jury.

■ Counsel next argues that an essential element of Count 11 was that I.T.T. suffered an "actual pecuniary loss." In this regard, the evidence was that Dunning did obtain the loan in question and there is nothing to indicate repayment. In any event, the gist of Count 11 is devising a scheme to defraud with a purpose of executing the scheme; the ultimate success or failure of the scheme is immaterial. *United States v. Stewart*, 872 F.2d 957 (10th Cir.1989).[2]

As to the conspiracy conviction, counsel argues that a reversal of Dunning's conviction on mail fraud (Count 11) requires a reversal on the conspiracy charge. The answer to that argument is that we are not reversing Dunning's conviction on Count 11.

■ Counsel next argues that the evidence was insufficient to convict Dunning of witness intimidation. Count 12 charged Dunning with intimidating and threatening to use physical force with an intent to hinder, delay and prevent Harold Ferry, Denise Buettner or Troy Smith from communicating to law enforcement officers information relating to the commission or possible commission of a federal crime in violation of 18 U.S.C. § 1512(b)(3). The

evidence was that when Ferry and the others were present at a meeting with Dunning (Ferry had a concealed recorder on his person at the meeting), Dunning, when talking about Claudia Lamb who was not present at the meeting, said that if Claudia Lamb caused her mother to go to jail, "she will not be on the face of this earth any longer. That goes for her or anyone else ..." Based on that evidence, a jury could reasonably conclude that Dunning was threatening not only Claudia Lamb, but "anyone else" who would cause her mother to go to jail. Such would constitute a threat against Ferry and the others who were present at the meeting. This threat would conceivably tend to make them think twice before going to law enforcement officers and giving information concerning Dunning's mother. Under 18 U.S.C. § 1512(b)(3) a threat does not necessarily have to succeed and cause the person threatened to refrain from giving information to law enforcement officers. *See United States v. Capo*, 791 F.2d 1054, 1069 (2d Cir.1986). *United States v. Maggitt*, 784 F.2d 590, 593 (5th Cir.1986). Furthermore, the jury instructions were such as to preclude the possibility that the jury convicted Dunning of making threats against Ferry because of the fact that she previously had made threats against Claudia Lamb.

■ In addition to the forty-six month term of imprisonment, the district court also entered a restitution order requiring Dunning to pay to the several banks and to I.T.T. the sum of $192,092. Counsel argues that there is nothing in the record to support such order. We agree. There is no indication of any present ability to pay anything. Nor is there anything to indicate that after her release from prison, Dunning would have an "earning potential" which would enable her to comply with a restitution order of this magnitude. *See United States v. Rogat*, 924 F.2d 983 (10th Cir.1991).

---

**2.** Counsel's reliance on *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) is misplaced. There the Supreme Court held that the mail fraud statute does not extend "to the intangible right of the citizenry to good government." *Id.* at 356, 107 S.Ct. at 2879.

The restitution order is reversed.  Otherwise, the judgments and sentences are affirmed.